[No. 19036. Department Two. June 26, 1925.]

GRACE MEYER TUCKER, *Appellant*, v. M. H. INGLISH *et al., Respondents.*[1]

DEEDS (61)—DELIVERY—EVIDENCE—SUFFICIENCY. The evidence is insufficient to sustain findings that a deed was delivered, where it appears by the preponderance of the evidence that, while negotiations for an exchange of property were still pending, the grantee in some way obtained possession thereof without the grantor's knowledge or consent, while she was still holding the deed until an abstract was examined and certain conditions were fulfilled; there being no mutual intent to pass the title or give the deed present effect.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered June 28, 1924, in favor of the defendants, in an action to quiet title, tried to the court. Reversed.

*Cole & Dolby, M. E. Sheldon,* and *O. A. Tucker,* for appellant.

*S. A. Keenan* and *E. P. Donnelly,* for respondents.

[1]Reported in 237 Pac. 297.

HOLCOMB, J.—This action was instituted by appellant as one in equity to annul a transfer and quiet title to certain real property in Seattle. The controversy grew out of an attempted exchange of the Seattle real estate, which was the separate property of appellant, for certain Lewis county real estate which was the community property of respondents. Allegations of misrepresentation and fraud as to the character of a certain mortgage on the real estate of respondents were made by appellant, and it was also averred that the deed of appellant to the Seattle real estate belonging to her was never delivered, or intended to be delivered, by her to respondents, and that the possession thereof by respondents and recording of the same by them in the records of King county were fraudulent.

The answer of respondents, after denying the fraudulent representations alleged by appellant, alleged that they were the owners of the Seattle property and entitled to possession thereof, and to have their title quieted therein, and for other and further equitable relief which they prayed in their answer. All affirmative allegations in the answer of respondents were denied by the reply of appellant.

Prior to September 20, 1923, appellant was the owner of the house and lot in Seattle in controversy. Respondents were the owners of a ranch in Lewis county. Both properties were incumbered. Appellant advertised in a Seattle paper for an exchange for Lewis county property because of the fact that her husband, a lawyer, had theretofore removed to Chehalis, Lewis county, and opened a law office there. Respondent, M. H. Inglish, a real estate dealer, answered the advertisement on the same day it appeared, in person, at the home of appellant on the real estate in Seattle. He tendered a trade of the Lewis county farm of forty acres for the Tucker property. He

represented his property to be of the value of $6,000, against which he claimed there was a $3,000 "straight" mortgage, due five years after September 22, 1922, with interest at seven per cent per annum, payable semi-annually; that there was a payment of $105 interest due September 22, 1923, which would make the stated payment due a few days after the offer. Appellant informed him that her husband was a lawyer and was in Chehalis, Lewis county, and that she would communicate with him and have him examine the land and the title. Her husband looked at the land a few days later and telephoned appellant.

Inglish induced Mrs. Tucker to go to Chehalis on September 19, and it was then arranged that he, appellant and her husband should go out and look at the property in Lewis county early on the morning of September 20. This they did, and, after returning from viewing the land, went to Mr. Tucker's office where a discussion took place concerning the trade, and Inglish exhibited a deed which he said his wife had signed and asked Mr. Tucker to have her acknowledge in Seattle over the telephone before Mr. Tucker or some other notary public. This Mr. Tucker refused to do, saying that such an acknowledgment would not be legal, and further objected to the form of the deed, which is mentioned by the various parties here as an Oklahoma form of deed. It was decided, however, to have Mr. Tucker draw up deeds, and that each party understood and agreed that he or she should retain his or her deed until Mr. Tucker had had an opportunity to examine the title to the Lewis county property, and until Mrs. Inglish should sign and acknowledge the deed of the Lewis county lands. Mr. Tucker signed and acknowledged his wife's deed to the Seattle property in order to make her deed further secure as against any community claim by him, with the under-

standing that appellant was to retain the deed until Tucker examined the title to the Lewis county property and advised her by telephone whether or not it was satisfactory. Mrs. Inglish was not in Chehalis, and it was understood and agreed that she was to execute and acknowledge the deed to the Lewis county property when appellant and Inglish returned to Seattle. Appellant kept possession of her deed to the Seattle property, and she and Inglish returned to Seattle on September 20. Respondent, the husband, had the deed which he had acknowledged in Chehalis to the Lewis county property and which he was to have his wife sign and acknowledge in Seattle.

The next morning, September 21, respondents, with their daughter, went to the residence of appellant in order, apparently, to hasten the consummation of the deal, and he demanded that appellant deliver her deed and accept his deed, saying, according to the testimony of respondent, the wife: "We have the deed and Mrs. Inglish is here to sign it." (Respondent's deed.) Appellant told them that she had received a telephone message from her husband saying that there was a $500 note due or past due on the incumbrance of respondents on the Lewis county land, and she did not seem satisfied. She insisted upon waiting until the next Monday until she went down to Chehalis and looked into the matter herself. There is evidence, which is uncontradicted, that foreclosure proceedings had been commenced on the mortgage on the Lewis county property on September 15, 1923, of which fact Mr. Tucker advised appellant by telephone on the evening of September 20. There were then some propositions and apparently attempted negotiations to procure money to pay off the $500 note which had become delinquent and rendered the whole $3,000 mortgage

due on the Lewis county land, but which came to naught.

Appellant then returned to Chehalis, and upon arriving there was asked by her husband if she had brought the deed of the Seattle property with her. She said she had. He advised her to put it in the safe, but when she looked at what she thought was her deed, which she had put in the pocket of her coat or cloak when she went to Seattle with Inglish, she found in its place a deed from one Hulet to Inglish and wife which she had never seen before. In some manner, apparently, Inglish had obtained possession of her deed to the Seattle property some time during the day of September 20, without her knowledge or consent. No consideration had, up to that time, passed to appellant from respondents. They had not delivered to appellant or to her husband any deed of title to the Lewis county land at any time until one was tendered during the trial of this case in the lower court. On September 21, 1923, respondents filed the deed to appellant's Seattle property in the auditor's office of King county. Immediately upon being advised of the filing of the deed on September 24, 1923, appellant instituted her action and filed a *lis pendens*.

Some of the above stated facts are controverted by respondents, but the overwhelming preponderance of the evidence supports the claim of appellant.

The trial court seems to have decided the case upon the theory that the evidence on behalf of appellant was insufficient to show fraud as alleged, and that there was sufficient delivery of the deed of appellant to respondents at Chehalis on September 20, 1923, to constitute an effectual delivery and a consummated, enforcible transaction.

The trial judge seems to have thought that, because Mrs. Inglish was ready and willing at all times to sign

the deed with her husband, and appellant refused to produce it for that purpose and instituted this action to recover her property, appellant is not entitled to recover.

This being an equity case we are obliged to try it *de novo*, although on the record produced below.

Upon this record, disregarding the questions of fact as to the issues of fraud raised in the pleadings other than as to the fraud in obtaining possession of appellant's deed in some way, we are thoroughly convinced that there was no delivery of deeds by either party to the other in Chehalis on September 20, 1923. While deeds were prepared and partially executed (wholly executed on the part of appellant), the overwhelming evidence is that they were not to be delivered until appellant had had an opportunity through her husband to examine the abstract and the title to the land in Lewis county. That certainly was not done on the 20th, because the parties were all together up to the time appellant and respondent M. H. Inglish left for Seattle; and then it was discovered by appellant's husband that there had been a $500 payment defaulted on the incumbrance of respondents on the Lewis county land sometime during that day and foreclosure proceedings had been begun, of which he at once informed appellant. There had been no delivery up to that time. When respondents went to the residence of appellant the next morning, there had been no delivery then. Even according to the testimony of the wife, one of respondents, and an interested party also, he stated to appellant that he had his deed to the Lewis county property still unexecuted by Mrs. Inglish. He was still demanding appellant's deed. Hence it had never been delivered up to that time. Appellant advised him of his misrepresentations as to the mortgage and of the fact that she was dissatisfied, and did not want to

complete the arrangement until she had been to Chehalis again and looked into the matter. There had still been no delivery. After leaving the residence of appellant and having obtained the deed in some way to her real estate, respondent caused her deed to be recorded.

Not only is no delivery of appellant's deed shown by her own and her husband's testimony, but by that of a disinterested witness, Mr. Bishop, who had the foreclosure proceedings against respondents. Besides it is reasonable to believe that the husband of appellant would not permit the delivery to be consummated so hastily as was insisted upon by respondent Inglish, but would insist upon an opportunity to examine the abstract and the title. That such action was eminently justified is proven by the developments.

"The intention of the parties is an essential element of delivery of a deed. It has been called the essence of delivery, and not only is often the determinative factor among other facts and circumstances, but is the crucial test where constructive delivery is relied upon. Categorically stated, the rule is that to the delivery of a deed it is essential that there be a giving by the grantor and a receiving by the grantee, with a mutual intention to pass the title from the one to the other; or, conversely, that it is sufficient when the deed is executed, and the minds of the parties meet, expressly or tacitly, in the purpose to give it present effect." 8 R. C. L., p. 978, § 48.

"In applying the rule of intention it has been held that where a husband and wife executed and acknowledged a deed of the wife's lands, and it was left by the wife in the husband's hands, with authority to determine when, if ever, it should be delivered, there was no delivery; that the fact that the deed was left by the grantor in a place accessible to the grantee did not constitute a delivery, in the absence of an intention on the part of the grantor to deliver and of the grantee to accept it; and that leaving a deed signed and attested

on a table, without delivery to any person, and in the absence of the donee, is not sufficient evidence of delivery. Similarly, a deed fraudulently or wrongfully obtained from a depositary passes no title to the supposed grantee." 8 R. C. L., p. 979, § 49.

Consequently, and disregarding all other questions, we are satisfied that there never was an intentional delivery of appellant's title deed to respondents, and that they never legally obtained title to the Seattle real estate belonging to appellant.

The decree is accordingly reversed, with instructions to enter a decree in favor of appellant with costs.

TOLMAN, C. J., MITCHELL, FULLERTON, and MACKINTOSH, JJ., concur.